UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

ERIC HAMILTON,

      Plaintiff,

  v.

LARRY GAVIN; KAREN JONES-HAYES;
DAMITA DELITZ; MICHAEL MILLER;
THOMAS DART,

      Defendants.

No. 22 C 02285

Judge Thomas M. Durkin

## MEMORANDUM OPINION AND ORDER

Plaintiff Eric Hamilton ("Hamilton") has sued various Cook County Jail officials in their individual capacities, as well as Cook County Jail Executive Director Michael Miller and Cook County Sheriff Thomas Dart in their official capacities under 42 U.S.C. § 1983 for their actions leading up to and following an April 2020 riot in the Cook County Jail. Specifically, Hamilton alleges Defendants modified security procedures which exposed Hamilton to a risk of injury, failed to protect him from other rioting detainees, forcibly moved him without a walking device, and failed to provide him with adequate medical attention and necessary medications. Defendants have moved to dismiss Hamilton's Second Amended Complaint ("SAC") against them for failure to state a claim. Mot. to Dismiss, ECF No. 30. For the reasons stated below, the motion is granted in part and denied in part.

## Standard of Review

A Rule 12(b)(6) motion challenges the "sufficiency of the complaint." *Berger v. Nat. Collegiate Athletic Assoc.*, 843 F.3d 285, 289 (7th Cir. 2016). The plaintiff's complaint must provide "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), sufficient to provide defendant with "fair notice" of the claim and the claim's basis. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). This standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). While "detailed factual allegations" are not required, "labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. The complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). " 'A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.' " *Boucher v. Fin. Sys. of Green Bay, Inc.*, 880 F.3d 362, 366 (7th Cir. 2018) (quoting *Iqbal*, 556 U.S. at 678). In applying this standard, the Court accepts all well-pleaded facts as true and draws all reasonable inferences in favor of the non-moving party. *Tobey v. Chibucos*, 890 F.3d 634, 646 (7th Cir. 2018).

## Background

Hamilton is a fifty-four-year-old man with serious medical conditions including diabetes, heart disease, hypertension, neuropathy, and amputated extremities on his

right leg. SAC, ECF No. 17, ¶ 81. Because of his various medical conditions, he requires a walking device and receives heart, pain, and neuropathy medication twice daily and doses of insulin thrice daily. *Id.* ¶¶ 3, 28–30.

At the time of the incident, Plaintiff was awaiting trial at the Cook County Jail and was housed in the jail's Residential Treatment Unit ("RTU") due to his medical conditions. *Id.* ¶¶ 3, 6. Hamilton was placed in Division 8-3G of the RTU, a "dormitory-style unit that houses up to 39 detainees in an open-room layout rather than cells." *Id.* ¶ 23. Hamilton alleges that, in response to COVID-19 outbreaks, Defendants Dart and Miller promulgated a policy whereby detainees who were otherwise ineligible for dormitory-style housing due to violent or disruptive behavior were transferred to Division 8-3G for quarantine if they tested positive for or were otherwise exposed to COVID-19. *Id.* ¶¶ 24–26. Inmates allegedly could not be transferred out of the Division without the express approval of Defendant Miller. *Id.* ¶ 25. Plaintiff also alleges that Defendants Gavin, Jones-Hayes, and Delitz were aware that correctional officers stopped "performing regular walk-throughs or standing guard inside Division 8-3G." *Id.* ¶ 27.

On the evening of April 28, 2020, and continuing into the early morning hours of April 29, 2020, thirteen detainees in Division 8-3G created and consumed a liquid intoxicant made from prescription medications, or "hooch," and began "stealing personal possessions, [and] harassing and threatening dormitory residents." *Id.* ¶¶ 32–34. Unspecified correctional officers became aware of this group, briefly entered Division 8-3G around 2:00 AM, and confiscated some of the hooch. *Id.* ¶ 37. Hamilton

alleges that these officers failed to fully sweep the premises or remove all the hooch and contraband. *Id.* ¶ 37. They further failed to "restrain, isolate, or remove" the thirteen intoxicated detainees from Division 8-3G because of the policy which prevented their transfer. *Id.* ¶ 38.

The next morning, a new set of unnamed officers punished the detainees' behavior by disabling the telephone and television. *Id.* ¶ 41. The intoxicated detainees became angry, and a riot broke out. *Id.* ¶ 42. They threw unsecured objects in the room, such as mop buckets, brooms, the telephone, and a computer. *Id.* Hamilton did not participate in the riot and attempted to protect himself while the intoxicated detainees threw some objects in his direction. *Id.* ¶ 43. Another detainee, who had allegedly obtained mace from a correctional officer, sprayed it throughout the room. *Id.* ¶ 44. This caused Hamilton to sustain "injuries to his eyes, nose, and mouth." *Id.* ¶ 45. Hamilton and other detainees "pleaded for Cook County Jail staff to protect them from the group of rioting detainees but those pleas were ignored." *Id.* ¶ 46.

According to Hamilton, "Defendants Gavin, Jones-Hayes, and Delitz directed Cook County Jail staff to avoid entering" Division 8-3G as they observed the riot through protective glass windows and security cameras for over an hour. *Id.* ¶¶ 47–48. Eventually, Defendants Gavin, Jones-Hayes, and Delitz ordered an Emergency Response Team to forcibly restrain all detainees in Division 8-3G, including Hamilton. *Id.* ¶ 50–51. Two unnamed officers, allegedly at the direction of Defendants, attempted to move Hamilton to a general population cell. *Id.* ¶ 52. He requested a wheelchair, walking device, or elevator to assist him because of his

4

amputated toes and balance issues. *Id.* ¶ 53. The officers ignored his request and forced him to walk down several flights of stairs. *Id.* ¶ 54. Hamilton struggled to keep his balance. *Id.*

Defendants held Hamilton in a general population cell for twelve hours. *Id.* ¶ 55. While there, he was denied medical care for his reactions to the mace and was not given his insulin and medications to control his heart and neuropathy conditions. *Id.* ¶¶ 56–57. He received one insulin dose on April 29, 2020 when he was moved back to Division 8-3G over twelve hours later. *Id.* ¶ 57.

On April 26, 2022, Hamilton filed a *pro se* complaint against Defendants Gavin, Jones-Hayes, Delitz, Dart, and "John Doe 1-4." R. 6. The operative Second Amended Complaint, which Hamilton filed with the assistance of counsel on September 12, 2022, names Michael Miller as well. R. 17. Against Gavin, Jones-Hayes, and Delitz in their individual capacities, Count I alleges a failure to protect Hamilton from the rioting inmates because they "purposefully, knowingly, or recklessly turned a blind eye" to conduct by officers working under their command and failed to timely respond to the riot. SAC ¶ 60. Against Dart and Miller in their official capacities, Count II alleges a failure to protect stemming from institutional policies that increased the risk of harm and prevented transfer of violent detainees. *Id.* ¶¶ 71–74. Counts III (against Gavin, Jones-Hayes, and Delitz) and IV (against Miller and Dart) allege deliberate indifference to Hamilton's serious medical needs after the riot because Defendants were aware of his conditions, ordered him to be moved without attending to his injuries, refused to offer a walking device, and placed him in general population

housing without his medications. *Id.* ¶¶ 81, 84–85, 89–90. Hamilton alleges that, as a result of Defendants' conduct, he sustained "significant risk of serious injury or death for failure to receive his regular medication," serious injuries to his eyes, nose, and throat, and "psychological injuries, mental trauma, fear, stress, pain and suffering." *Id.* ¶¶ 69, 78, 87, 92.

## Analysis

### I. Claims Against Defendant Miller

Defendant Miller argues that he should be dismissed from the lawsuit because the official-capacity claims against him are time-barred and redundant. Miller argues that, because every suit against a government official in his or her official capacity is actually a suit against the entity the official represents, the official-capacity claims against Miller are duplicative of the official-capacity claims against Dart because they both are officials within the Cook County Sheriff's Office.

The Court agrees. *See Sanders v. Sheahan*, 198 F.3d 626, 629 (7th Cir. 1999) ("A claim against a government employee acting in his official capacity is the same as a suit directed against the entity the official represents."); *see also Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 n.55 (1978); *Doe v. Sch. Dist. U-46*, 557 F. Supp. 3d 860, 871 (N.D. Ill. 2021). The official-capacity claim against Miller, is in reality a claim for relief against the Cook County Department of Corrections, a department within the Cook County Sheriff's Office. *Moy v. Cnty. of* Cook, 159 Ill.2d 519, 526 (1994); *see also Hildreth v. Cook Cnty.*, 2010 WL 1656810, at *4 (N.D. Ill. Apr. 23, 2010) (dismissing official capacity claim against the Executive Director of the Cook

County Department of Corrections when the Cook County Sheriff was a defendant). And the official-capacity claims against Dart, the Cook County Sheriff, are also claims against the Cook County Sheriff's Office. In such cases, the lower-level defendant should be dismissed because he "adds nothing to [a] claim against the sheriff's office." *Id.*

Hamilton's invocation of *Antonelli v. Sheahan*, 81 F.3d 1422 (7th Cir. 1996), for the proposition that both the Sheriff and the jail's Executive Director "can be expected to know of or participate in creating systemic, as opposed to localized, situations" is inapposite. *Antonelli* held that higher-level prison officials could be liable for deliberate indifference claims in their *individual* capacities, upon a showing that they personally participated in the deprivation of the plaintiff's rights. 81 F.3d at 1428. It said nothing about official-capacity claims. Moreover, *Whitehead v. Dart*, which allowed official-capacity claims against the Sheriff and the Director of Facilities Management to proceed, is inapplicable because Facilities Management is not part of the Sheriff's Office, and the plaintiff was thus suing two different entities. 2016 WL 8732320, at *6 (N.D. Ill. July 1, 2016). And, as Defendants point out, the language in *Brown v. Dart*, which Hamilton cited, actually supports Miller's dismissal: "because the CCDOC is a department within the Cook County Sheriff's office, . . . Plaintiff is attempting to sue the same entity twice. . . . [T]he inclusion of [the Executive Director of the Cook County Jail] adds nothing to Plaintiff's official capacity claim against the Sheriff's office, because Plaintiff has already sued Sheriff Dart." 2017 WL 3219217, at *4 n.5 (N.D. Ill. July 28, 2017). It was only because there

7

was a surviving claim against the Executive Director in her individual capacity that the court allowed the claims against her to proceed. *Id.* ("Because Defendant Smith has also been named in her individual capacity, however, dismissing the official capacity claim against her would not remove her from this litigation.").

Because the official capacity claims against Miller are duplicative, the Court accordingly grants Defendants' motion to dismiss the claims against Miller with prejudice.[1] Because Miller can be dismissed for this reason, the Court does not need to address whether the claims against Miller are time-barred.

## II.    Failure to Protect Claims

Hamilton first alleges Defendants failed to protect him from harm inflicted by the other rioting detainees. "Incarcerated people have a clearly established right to be free from physical harm inflicted by others in the institution." *Kemp v. Fulton Cnty.*, 27 F.4th 491, 494 (7th Cir. 2022) (citing *Farmer v. Brennan*, 511 U.S. 825, 833 (1994)).[2] Lawsuits brought by pre-trial detainees under the Fourteenth Amendment are governed by an objective reasonableness standard rather than the Eighth Amendment's deliberate indifference standard. *Thomas v. Dart*, 39 F.4th 835, 841 (7th Cir. 2022); *Kemp*, 27 F.4th at 495. This is because pretrial detainees enjoy a presumption of innocence; therefore, the Constitution protects them from any

---

[1] No new facts will make the official-capacity claims against Miller any less redundant to Hamilton's surviving official-capacity claims against Dart.

[2] As such, Defendants' qualified immunity argument fails on these claims. Qualified immunity protects a government official from liability for actions which do "not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *City of Escondido, Cal. v. Emmons*, 139 S. Ct. 500, 503 (2019).

punishment for the acts that led to their detention. *Kemp*, 27 F.4th at 495 ("[A] plaintiff . . . challenging the conditions of his pretrial detention need show only that a defendant's conduct was 'objectively unreasonable.'").[3]

In order to state a claim, a pre-trial detainee must allege: (1) defendants "made an intentional decision regarding the conditions of the plaintiff's confinement;" (2) "those conditions put the plaintiff at substantial risk of suffering serious harm;" (3) the defendants "did not take reasonable available measures to abate the risk, even though a reasonable officer in the circumstances would have appreciated the high degree of risk involved," and the consequences of inaction would have been "obvious;" and (4) the defendants' inaction caused the plaintiff's injuries. *Thomas*, 39 F.4th at 841. As to the second element, a risk is "substantial" if it is "almost certain to materialize if nothing is done." *Brown v. Budz*, 398 F.3d 904, 911 (7th Cir. 2005).

### A. Count I

Count I alleges Defendants Gavin, Jones-Hayes, and Delitz failed to protect Hamilton by (1) turning a blind eye to their subordinates' failures to routinely monitor and search Division 8-3G and (2) ordering their subordinates not to respond to the riot for over an hour. SAC ¶¶ 60–62. There is no *respondeat superior* liability for § 1983 actions, so a government official is only "liable for his or her own

---

[3] Defendants argue that Hamilton must plead that they had actual knowledge of impending harm. However, this standard was overruled in the pre-trial detainee context by the Seventh Circuit's decision in *Kemp*, 27 F.4th at 497. ("[W]e now hold that *Kingsley* abrogates *Guzman*, *Butera*, and their kin to the extent that they require pretrial detainees to show, in a failure-to-protect case, that a defendant was subjectively 'aware of a substantial risk of serious injury.'"). Although there is a dearth of case law applying it, the proper standard is now one of objective reasonableness.

misconduct." *Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009). The official must "know about the conduct and facilitate it, approve it, condone it, or turn a blind eye for fear of what they might see." *Matthews v. City of East St. Louis*, 675 F.3d 703, 708 (7th Cir. 2012).

First, Plaintiff's allegations that Defendants Gavin, Jones-Hayes, and Delitz are liable for turning a blind eye to their subordinates' failures to routinely monitor and search Division 8-3G do not pass muster for multiple reasons. Because the subordinate officers are not named parties, Hamilton bears the burden of explaining how his injuries stemming from the subordinate officers' failures are fairly traceable to Defendants. *Horshaw v. Casper*, 910 F.3d 1027, 1029 (7th Cir. 2018) ("[S]upervisors are responsible for their own acts but not for those of subordinates, or for failing to ensure that subordinates carry out their tasks correctly."). Hamilton does not do so except through conclusory allegations. *See* SAC ¶ 27 (broadly alleging, without factual support, that Gavin, Jones-Hayes, and Delitz were "aware" of their subordinates' failures).

Even if each of the Defendants could be held personally liable, Hamilton has not stated how their decisions to turn a blind eye put Hamilton at "substantial risk of suffering serious harm" beyond the "baseline dangerousness" of a jail. *Dawson v. Dart*, 2020 WL 1182659, at *2 (N.D. Ill. March 12, 2020) (quoting *Grieveson v. Anderson*, 538 F.3d 763, 776 (7th Cir. 2008)). He has also not explained how or why the riot was an "obvious" consequence of gaps in monitoring or standing guard that a reasonable officer should have recognized. A failure to protect claim requires "a

10

'strong likelihood' rather than a 'mere possibility' that violence will occur" in order to impose liability. *Pinkston v. Madry*, 440 F.3d 879, 889 (7th Cir. 2006).[4] Therefore, the paragraphs of Count I containing Hamilton's claim against Gavin, Jones-Hayes, and Delitz for turning a blind eye to their subordinates' failures to monitor or search Division 8-3G are stricken. SAC ¶¶ 61, 64.

Plaintiff's claim in Count I that Defendants Gavin, Jones-Hayes, and Delitz failed to protect him by ordering their subordinates not to respond to the riot for over an hour, however, may proceed. Plaintiff has pleaded that Gavin, Jones-Hayes, and Delitz observed the riot through protective glass and security footage and directly ordered their subordinates not to enter the Division for at least an hour, despite Hamilton and other detainees' pleas for help. This decision put Hamilton, a detainee with significant medical needs and mobility issues, at an obvious substantial risk of suffering serious harm as other intoxicated detainees threw projectiles and sprayed mace.

Though prison officials are given more leeway when responding to an emergent situation such as a riot, Hamilton can at least make out a plausible claim that Defendants' actions were objectively unreasonable, given his vulnerability and the amount of time that elapsed. As the Supreme Court has noted, "officers facing disturbances are often forced to make split-second judgments—in circumstances that

---

[4] These allegations would also fail because it likely was not objectively unreasonable for Defendants to allow their subordinates to modify their monitoring and searching procedures of Division 8-3G, a COVID-19 quarantine unit, given that the incident occurred during the first months of a pandemic which had already caused substantial outbreaks in the jail.

11

are tense, uncertain, and rapidly evolving. . . . [A] court must judge the reasonableness of the force used from the perspective and with the knowledge of the defendant officer." *Kingsley*, 576 U.S. 389, 400 (2015) (citations omitted). Taking Hamilton's well-pleaded allegations as true, the Court here cannot determine as a matter of law whether Defendants were objectively reasonable in waiting to intervene for over an hour.

The cases cited by Defendants are easily distinguishable. *Sibley*, the case on which Defendants rely for the principle that officers' actions are presumptively reasonable during an emergency situation, was a conditions of confinement case relating to smoke inhalation from a fire. *Sibley v. Dart*, 435 F. Supp. 3d 920, 929 (N.D. Ill. 2019) (collecting cases in which conditions of confinement were caused by emergencies or accidents). Defendants' other cases were decided at the summary judgment stage with the benefit of discovery. *See, e.g.*, *Shields v. Dart*, 664 F.3d 178, 181 (7th Cir. 2011); *Guzman v. Sheahan*, 495 F.3d 852, 858 (7th Cir. 2007). Therefore, with the exception of Paragraphs 61 and 64, which are stricken, Defendants' motion to dismiss as to Count I is denied.

### B. *Monell* Claims

In Count II, Hamilton pleads a *Monell* failure to protect claim due to the following explicit jail policies: (1) placing violent detainees with COVID-19 in the same open-layout division as those with serious medical needs and (2) adopting a "no move" policy that prevented transfer of detainees without prior approval. *Id.* ¶¶ 71-74. The Seventh Circuit recognizes that a governmental entity is liable under § 1983

12

if "an express policy . . . causes a constitutional deprivation when enforced." *Spiegel v. McClintic*, 916 F.3d 611, 617 (7th Cir. 2019). A plaintiff must show a "direct causal link" between the challenged action and violation of his constitutional rights. *First Midwest Bank v. City of Chicago*, 988 F.3d 978, 987 (7th Cir. 2021). In other words, the plaintiff must allege that a policy or custom "was the moving force behind the federal-rights violation." *Id.* at 986-87.

Hamilton's claim based on the first policy—the housing of "violent" detainees with COVID in Division 8-3G—does not withstand the motion to dismiss. Specifically, he does not plead how his injuries predicated by the riot were caused by this policy. Hamilton does not allege that the detainees who participated in the riot were those who would have otherwise been ineligible to be housed in Division 8-3G. *Perkins v. Lawson*, 312 F.3d 872, 875 (7th Cir. 2002) (explaining that, to make a *Monell* claim, plaintiffs must show the policy is what caused the injury). And it is not "obvious" that the jail's housing policy would cause a riot. Similar cases disclose his claim. For example, the Seventh Circuit rejected a similar failure to protect claim arising out of a prison's policy of allegedly mixing violent with non-violent prisoners in *Smith v. Sangamon Cnty. Sheriff's Dep't*, 715 F.3d 188, 192 (7th Cir. 2013). Though decided under the deliberate indifference standard, the court found that the plaintiff had not shown there was a "patently obvious" risk of serious harm caused by the policy. *Id.*; *see also James v. Milwaukee*, 956 F.2d 696, 697, 703 (7th Cir. 1992) ("[As] a constitutional matter, [plaintiff] is not entitled to a particular prison classification

system,") (finding lack of a causal link between an open-room layout and the increased risk of violence, rather than the existence of violence generally).

On the other hand, Hamilton's "no move" policy claim may proceed. It is at least plausible that, once jail employees had identified intoxicated, belligerent detainees, the application of the "no move" policy put Hamilton, a medically vulnerable person who cannot move well, at substantial risk of harm and caused the riot. *See Hueston v. Sheriff of Allen Cnty.*, No. 1:22-CV-173-HAB-SLC, 2022 U.S. Dist. LEXIS 195669, at *3-5 (N.D. Ind. Oct. 27, 2022) (plaintiff had adequately pleaded that his injuries from his cell mate beating him were caused by the jail's no-move policy). Therefore, the allegations in Count II pertaining to the "no move" policy survive Defendants' motion to dismiss, but the allegations in Count II pertaining to the COVID housing policy (part of ¶ 71, ¶ 72, and part of ¶ 74) are stricken.

## III. Failure to Attend to Serious Medical Needs Claims

In Counts III and IV, Hamilton alleges that Defendants failed to attend to his serious medical needs when they failed to treat him for his injuries from being maced, forced him to walk down a flight of stairs without a walking aid, and neglected to give him his regularly-scheduled medications for twelve hours. The denial of medical care for an "objectively serious medical condition," *Miranda v. Cnty. of Lake*, 900 F.3d 335, 353 (7th Cir. 2018), violates a pretrial detainee's Fourteenth Amendment rights when the "defendants acted purposefully, knowingly, or perhaps even recklessly when they considered the consequences" of how they handled the detainee's condition; and the

conduct was "objectively unreasonable." *McCann v. Ogle Cnty. Ill.*, 909 F.3d 881, 886 (7th Cir. 2018).

First, Counts III and IV must be dismissed because injuries from mace do not constitute an objectively serious medical condition. The SAC alleges that, as a result of mace inhalation, Hamilton suffered injuries to his eyes, nose, and throat. But absent allegations that the mace aggravated an underlying condition, courts have routinely held that "the lingering effects of being pepper-sprayed or exposed to similar chemical agents are not objectively serious medical conditions." *Buchanan v. Pfister*, 2018 WL 4699778, at *7 (N.D. Ill. Oct. 1, 2018) (collecting cases); *cf. Young v. Breeding*, 929 F. Supp. 1103 (N.D. Ill. 1996) (severe asthma attack caused by mace was an objectively serious medical condition).

Although Hamilton's other conditions (diabetes, heart conditions, neuropathy, amputated extremities, etc.) are objectively serious, Counts III and IV do not state a claim because Hamilton does not allege any injury or adverse effect caused by being forced to walk out of Division 8-3G and down a flight of stairs or missing his medication doses. At most, he alleges he struggled to maintain his balance and suffered a "risk" of injury. But absent any concrete or particularized allegation of harm, this Court cannot provide relief. *McRoy v. Sheahan*, 188 F. App'x 523, 525 (7th Cir. 2006) (A "delay in treatment must have a detrimental effect on the prisoner's health."); *Langston v. Peters*, 100 F.3d 1235, 1240 (7th Cir. 1996) ("An inmate who

15

complains that delay in medical treatment rose to a constitutional violation must . . . establish the detrimental effect . . . to succeed.").[5]

Moreover, temporary denial of medication doses, without more, does not rise to the level of recklessness required to state a claim. The cases cited by the parties on this point, though largely decided under the deliberate indifference standard, are instructive. For example, in *Zentmyer v. Kendall Cnty., Ill.*, 220 F.3d 805, 812 (7th Cir. 2000), the Seventh Circuit explained that "forgetting doses of medicine, however incompetent, is not enough" to state a claim of deliberate indifference. *Id.*; *see also Waldrop v. Wexford Health Sources, Inc.*, 646 F. App'x 486, 490-92 (7th Cir. 2016) (isolated denial of insulin by a nurse and a change in dosage were protected by qualified immunity, but doctor withdrawing insulin prescription was not protected); *Warman v. Funk*, 119 Fed. App'x 789, 791 (7th Cir. 2004) ("[F]ailure to administer prescription medicine alone does not demonstrate deliberate indifference."); *Fields v. Miller*, No. 20-CV-1211-PP, 2021 WL 1400907, at *2 (E.D. Wis. Apr. 14, 2021) (plaintiff did not state claim based on single missed dose of medication with no reported adverse effects). Hamilton's claims of a temporary deprivation of medication doses and insulin during a riot squarely fall in this line of cases. On the other hand, the Seventh Circuit has found a long-term denial of heart medication to be

---

[5] This also raises Article III standing issues. "To establish Article III standing, an injury must be 'concrete, particularized, and actual or imminent; fairly traceable to the challenged action; and redressable by a favorable ruling.'" *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013). An injury "is concrete if it is 'real,' not abstract." *Lukaszczyk v. Cook County*, 47 F.4th 587, 596 (7th Cir. 2022) (citations omitted). By not alleging any concrete harm caused by walking down the stairs or missing his medication doses, it appears that Hamilton lacks standing to allege his claims in Counts III and IV.

16

deliberately indifferent because the inmate suffered heart palpitations as a result and repeatedly warned the prison guards of the adverse effects of missing medication doses. *Wynn v. Southward*, 251 F.3d 588, 594 (7th Cir. 2001). On the contrary, Hamilton here does not allege he suffered any ill effects of skipping his doses for twelve hours, nor that he informed any prison officials of the deprivation.

Therefore, Defendants' actions of moving Hamilton out of Division 8-3G (and away from the mace) without a walking device and failing to give him his medications for less than a day with no adverse effects, in the context of a riot, do not rise to the level of stating a claim. More—something akin to recklessness—is required. Therefore, Defendants' motion to dismiss is granted as to Counts III and IV.

## Conclusion

For the foregoing reasons, Defendants' motion to dismiss, R. 30, is granted in part and denied in part. The claims against Defendant Miller are dismissed with prejudice. Paragraphs 61, 64, 72, and parts of 71 and 74 are stricken, and Counts III and IV are dismissed in their entirety without prejudice. The motion is otherwise denied.

ENTERED:

*Thomas M. Durkin*

Honorable Thomas M. Durkin
United States District Judge

DATED:  February 22, 2023

17